IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY THOMAS, | No. C 04-5380 SBA |
| Plaintiff, | **ORDER** |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | [Docket Nos. 12 & 13] |
| Defendant. | |

Plaintiff Danny Thomas ("Plaintiff") brings this action pursuant to the judicial review provision of the Social Security Act, 42 U.S.C. § 405(g), to obtain review of a decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for Social Security disability benefits. Now before the court are Plaintiff's Motion for Summary Judgment or Remand and Defendant's Cross-Motion for Summary Judgment. Having read and considered the papers submitted by the parties, and having reviewed the record as a whole, the Court DENIES Defendant's Motion for Summary Judgment, DENIES Plaintiff's Motion for Summary Judgment and GRANTS Plaintiff's motion for remand.

## **BACKGROUND**

**A.     Facts**

On May 24, 2001, Plaintiff Danny Thomas was injured in an ultralight aerial accident. (Tr. 18.) The accident resulted in an acute fracture in Plaintiff's lumbar spine at L2. (Tr. 18.) Plaintiff wore a rigid back brace (Thoracic Lumbrosacral Orthosis, or TLSO) for several months. (Tr. 19, 163, 180, 181.) Neurosurgeon Alan Hunstock evaluated Plaintiff on the day of the accident, and Plaintiff returned to Dr. Hunstock for follow-up consultations four times between July 10, 2001 and December 4, 2001. (Tr. 180, 214-218.) On December, 4, 2001, Dr. Hunstock indicated that Plaintiff "seems to be making good progress," but was still taking one or two vicodin a day for pain. (Tr. 183.) Also, after each visit,

1  Dr. Hunstock extended his estimate when Plaintiff would be able to return to work. (Tr. 215, 217, 218.)
2  On August 30, 2001, Dr. Hunstock thought Plaintiff would be able to return to work a month later; by
3  December 4, 2001, Dr. Hunstock thought it would be another five months before Plaintiff could return
4  to work. (Tr. 215, 218.)

5  On May 1, 2002, Dr. Steve McIntire examined Plaintiff and filed a report of his findings on May
6  15, 2002. (Tr. 191.) Dr. McIntire stated that Plaintiff's fracture "appeared stable with normal
7  alignment." (Tr. 191.) Dr. McIntire also noted Plaintiff's episodic lumbar pain, and that Plaintiff was
8  taking Flexeril and Vicodin as needed. (Tr. 191.) Based on an extensive evaluation, Dr. McIntire
9  opined that Plaintiff would have to limit lifting and carrying, but that Plaintiff had no additional
10 functional limitations. (Tr. 192-194.) Dr. McIntire also noted heavy calluses at the bases of Plaintiff's
11 fingers on both hands, suggesting recent, frequent power gripping activities. (Tr. 194.) On September
12 19, 2002, another doctor (whose signature is unclear) reached conclusions similar to Dr. McIntire, but
13 opined greater limitations on lifting and carrying, and also recommended limitations on climbing,
14 balancing, stooping, kneeling, crouching, and crawling. (Tr. 205-212.) This doctor also noted the
15 calluses on Plaintiff's hands. (Tr. 210.)

16 On September 26, 2002, Plaintiff began visiting Dr. Jaqueline Adler for primary medical care.
17 (Tr. 243-249.) Dr Adler noted that Plaintiff's L2 fracture was stable and that Plaintiff had chronic back
18 pain. (Tr. 249.) By November 18, 2002, Plaintiff was using only Ibuprofen and Tylenol to control pain.
19 (Tr. 248.) On January 6, 2003, and on all subsequent visits, Dr. Adler noted that Plaintiff had major
20 depression. (Tr. 243-246.) Dr. Adler prescribed Paxil for depression. (Tr. 246.) By February 4, 2003,
21 Plaintiff discontinued Paxil because it appeared to make him irritable. (Tr. 245.) On February 5, 2003,
22 Dr. Adler referred Plaintiff to Dr. Frank Gonzales for counseling. (Tr. 247.)

23 **B.    Procedural History**

24 On January 6, 2002, Plaintiff filed his application for Social Security disability benefits. (Tr.
25 93.) On May 21, 2002, the Social Security Administration ("SSA") denied Plaintiff's claim. On July 2,
26 2002, Plaintiff signed an agreement with counsel Charles Binder of Binder & Binder to represent him
27 in this matter. (Tr. 64.) On September 23, 2002, the SSA denied Plaintiff's claim again on rehearing.
28 (Tr. 66-69.) On November 14, 2002, Plaintiff filed a request for hearing, and on August 22, 2003 the

hearing was held before Administrative Law Judge ("ALJ") Charles D. Reite. (Tr. 25-56.) On October 9, 2003 the ALJ issued his decision, denying benefits to Plaintiff. (Tr. 15.) Plaintiff timely appealed to the Appeals Council, and on October 18, 2004 the Appeals Council found no reason to review the opinion of the ALJ. (Tr. 6.) On December 20, 2004 Plaintiff filed suit in this Court to review the final decision of the Social Security Commissioner (Docket No. 1).

**C.     Summary of ALJ's Findings**

After consideration of the entire record, the Administrative Law Judge made the following findings regarding the Plaintiff's alleged disability:

> 1. The claimant met the disability insured status requirements of the Act on May 24, 2001, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since May 24, 2001.
>
> 3. The medical evidence establishes the claimant severe impairments include an L2 compression fracture and has old healed thoracic compression fractures, depression, and polysubstance abuse in alleged remission. He does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4. The claimant's testimony was not credible to the extent he alleged an inability to perform any work.
>
> 5. The claimant is unable to perform his past relevant work.
>
> 6. The claimant's residual functional capacity for the full range of sedentary work is reduced by the limitations described above.
>
> 7. The claimant is 47 years old, which is defined as a younger individual (20 CFR 404.1563).
>
> 8. The claimant has a high school education (20 CFR 404.1564).
>
> 9. The claimant does not have any acquired work skills that are transferable to the skilled or semiskilled work functions of other work (20 CFR 404.1568).
>
> 10. Based on an exertional capacity for light work, the claimant's age, education, and work experience, Section 404.1569 and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of not disabled.
>
> 11. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of light work, using the above-cited rule as a framework for decision-making along with the credible vocational expert testimony, there are significant numbers of jobs in the economy that he could perform. Examples and incidence of such jobs are cited in the text of [the ALJ's] decision.
>
> 12. The claimant was not under a disability, as defined in the Social Security Act, at any

1 time through the date of this decision (20 CFR 404.1520(f)).

2 (Tr. 20, 21.)[2] Accordingly, the ALJ concluded that Plaintiff was not disabled, and therefore ineligible
3 for Social Security disability benefits.

## LEGAL STANDARD

When a District Court reviews a denial of Social Security Disability Insurance benefits, the court must hold unlawful and set aside the denial if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court must uphold an ALJ's decision to deny benefits if the decision is free of legal error and supported by "substantial evidence." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion based on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Evidence can be substantial if it is more than a scintilla, even though less than a preponderance. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). Rather, the court must consider the record as a whole, weighing both the evidence that supports and evidence that rebuts the Commissioner's conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

When there are conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004). To reject a treating physicians's opinion in favor of an examining physician, an ALJ must make specific legitimate findings based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751(9th Cir. 1989). However, this rule does not apply "when the nontreating physician relies on independent clinical findings that differ from the findings of the treating physician." *Id.*

## ANALYSIS

Plaintiff asserts two arguments in support of his motion. His first argument is that the ALJ

---

[2] The ALJ issued his decision October 9, 2003.

4

erroneously rejected the functional capacity assessment of treating internist Dr. Adler. This argument is not persuasive because the ALJ had detailed specific medical reports from several other doctors that rebutted Dr. Adler's assessment. Plaintiff's second argument is that the ALJ disregarded Dr. Adler's findings of severe depression without supporting evidence. Since the ALJ made his own medical judgment about Plaintiff's depression without supporting evidence, the ALJ committed reversible error.

**A.     Rejection of Dr. Adler's Functional Capacity Assessment**

Current treating physician Dr. Adler indicated that Plaintiff has a very limited residual functional capacity. (Tr. 232-233.) However, Plaintiff's original treating physician and three other doctors concluded that Plaintiff has sufficient residual capacity to work. (Tr. 215-218 (original treating physician Dr. Hunstock), 191-194 (Dr. McIntire), 195-202 (Dr. Clancey), 205-212 (Dr. Zu[3]).) An ALJ has the duty to resolve the conflicting medical opinions. *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004). In general, greater weight must be given to the opinion of treating physicians, and an ALJ must give specific, legitimate reasons for disregarding the opinion of a treating physician. *Id.* However, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. *Id.* Further, specific reasons are not required when a nontreating physician relies on independent clinical findings that differ from the findings of the treating physician. *Id.*

The ALJ credited the opinion of treating neurosurgeon Dr. Hunstock. Dr. Hunstock treated Plaintiff for his back injury the day it occurred (May 24, 2001), and followed up several times through December 4, 2001. Dr. Hunstock opined that Plaintiff could return to work in May, 2002. The ALJ found Dr. Hunstock's opinion supported by the independent evaluations of Drs. McIntire, Clancey, and Zu. In particular, the ALJ noted from Dr. McIntire's orthopedic evaluation that Plaintiff's fracture had stabilized, did not require surgery, and X-rays of Plaintiff's spine revealed normal alignment. (Tr. 19.) The ALJ further noted from Dr. McIntire 's report that Plaintiff's pain was nonradicular (not from nerve roots), Plaintiff had a normal gait, and Plaintiff showed no signs of abdominal guarding (spasm of the abdominal wall muscles to protect inflamed abdominal viscera). (Tr. 19.)

The ALJ discredited Dr. Adler's opinion that Plaintiff "was restricted to a limited range of

---

[3] This doctor's name appears only as a signature, so "Zu" may not be the correct spelling. (Tr. 212, 213.)

5

sedentary work." To support this assessment, the ALJ indicated that:

- Dr. Adler's progress reports showed essentially normal examinations;
- Dr. Adler treated Plaintiff conservatively, and noted that ibuprofen relieved Plaintiff's pain;
- In Dr. Adler's medical notations, she did not specify any restrictions on residual functional capacity.

The ALJ therefore found that Dr. Adler's assessment was not supported by her own examinations, and not supported by the medical evidence as a whole in light of the reports by Drs. Hunstock and McIntire.

To resolve the conflicting opinions of treating physicians Hunstock and Adler, the ALJ recited substantial medical evidence to support his conclusion regarding Plaintiff's residual functional capacity. *See Batson*, 359 F.3d at 1195. Since Dr. Adler's opinion conflicted with the opinions of both treating physician Dr. Hunstock and examining physician Dr. McIntire, the ALJ gave three specific reasons to discredit Dr. Adler's opinion. *See Magallanes*, 881 F.2d at 751. Further, because the assessments of Drs. Hunstock and McIntire were based on their own extensive independent evaluation of Plaintiff, the ALJ was not required to provide specific findings to discredit Dr. Adler's opinion. *See Batson*, 881 F.2d at 751. In any event, the ALJ had substantial evidence to conclude that Dr. Adler's opinion was not supported by the medical evidence as a whole. *See id.* In sum, the ALJ followed the proper legal standard, and there was substantial evidence to support his conclusion. Therefore, this part of the ALJ's decision is AFFIRMED.

**B.      Lack of Supporting Evidence in Determining Mental Function Limitations**

Dr. Adler specifically identified depression as one of Plaintiff's significant ailments at all clinical visits from January 6, 2003 onward. (Tr. 243-246.) Dr. Adler prescribed Paxil to address the Plaintiff's depression, and referred Plaintiff to Dr. Frank Gonzales for counseling. (Tr. 245-247.) The ALJ noted that "claimant has additional severe impairments of depression ...," but without citing any evidence, concluded that it created "no limit on activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace ...." (Tr. 19-20.) A treating physician whose opinion is uncontradicted may only be rejected by clear and convincing evidence on the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is not a medical expert, and therefore may not make his own assessment of claimant's condition. *Day v. Weinberger*,

6

522 F.2d 1154, 1156 (9th Cir. 1975). Further, "in Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff correctly asserts that Dr. Adler's opinion about Plaintiff's depression is uncontradicted on the record. This is particularly clear because Defendant's Opposition and Cross-Motion for Summary Judgment cites no contradictory evidence from the record. (Defendant's Opposition and Cross-Motion, p. 7-8.) If the ALJ was uncertain or unconvinced by the evidence regarding depression, it was incumbent upon him to secure additional information for the record. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). The circumstances here are analogous to the plaintiff in *Day v. Weinberger*, 522 F.2d 1154 (9th Cir. 1975). In *Day*, the ALJ noted the opinions of two treating physicians regarding plaintiffs's pain, but rejected those opinions. *Id.* at 1156. The ALJ relied primarily on his own observations of the plaintiff during the hearing. *Id.* Although an ALJ could consider the appearance of the plaintiff during the hearing, the court concluded that it was insufficient to overcome the uncontradicted medical testimony and the testimony of the plaintiff. *Id.* at 1156-57. Similarly, the ALJ here cannot reject the medical opinion of Dr. Adler without more specific substantial support.

Although the ALJ's error is sufficient to grant remand, it is insufficient to grant summary judgment in favor of Plaintiff. First, because Dr. Adler's opinion regarding the extent of Plaintiff's physical disability was contracted by other doctors, there is concern about Dr. Adler's credibility. Second, Dr. Adler is a doctor of internal medicine, not a psychologist or psychiatrist; her opinion regarding Plaintiff's depression would be more persuasive if she were a mental health professional. (Tr. 236.) Third, Dr. Adler did not raise the issue of depression until Plaintiff's third visit to her office. (Tr. 246, 248, 249.) Fourth, although Dr. Adler referred to Plaintiff's lifelong depression, Plaintiff was able to work in the past. (Tr. 247.) *See Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988) (holding that plaintiff's ability to work for a number of years with the same back problem was a factor in concluding that the plaintiff was not disabled now). The record thus supports only a remand for reconsideration of Plaintiff's depression.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for Summary Judgment or Remand is DENIED with respect to Summary Judgment, and GRANTED with respect to the request for Remand. Defendant's cross-motion for Summary Judgment is DENIED. The matter is remanded to the ALJ.

IT IS SO ORDERED.

Dated: 2/28/06

SAUNDRA BROWN ARMSTRONG
United States District Judge